# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANITA MARIE IDLER,

               Petitioner,      :      Case No. 3:19-cv-338

   - vs -                             District Judge Walter H. Rice
                                      Magistrate Judge Michael R. Merz

SHELBIE SMITH, Warden,
  Dayton Correctional Institution,

                                    :
               Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court on Respondent's Objections (ECF No. 10) to the Magistrate Judge's Report and Recommendations (ECF No. 9). Petitioner has lodged no objections to the Report and the time for doing so has expired. Judge Rice has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Order, ECF No. 11).

Idler is imprisoned on her convictions for theft of a firearm, receiving stolen property, aggravated possession of drugs, and illegal conveyance of drugs into a detention facility. In this action, she challenges only the illegal conveyance conviction, pleading:

> **Ground One:** Anita Idler's conviction for illegal conveyance is based on insufficient evidence.
>
> **Supporting Facts:** Ohio's illegal conveyance statute requires the State to establish that the defendant purposely[1] conveyed drugs into a detention facility. Here, the State merely established possession of a small baggie bearing methamphetamine residue under her clothing

---

[1] Petitioner has conceded that the correct scienter element is "knowingly," rather than "purposely."

1

> when MS. Idler was booked into jail, not a purpose to convey drugs into the facility.

(Petition, ECF No. 1, PageID 5).

Respondent defended the conviction on the merits, contending the Ohio Twelfth District's decision was entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Return, ECF No. 7, PageID 261-66, relying on *State v. Idler*, 2019-Ohio-2159 (Ohio App. 12th Dist. Jun. 3, 2019), appellate jurisdiction declined, 156 Ohio St. 3d 1500 (2019).

The Report concluded the Twelfth District had decided Idler's federal claim on the merits and employed the correct federal standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979)(Report, ECF No. 7, PageID 282). It also noted Petitioner did not dispute the state court findings of fact. *Id.* The Report also concluded that Idler testified incredibly when she claimed the baggie with that fell from her bra during booking was not hers. *Id.* at PageID 283. Although she later denied it at trial, Idler had admitted the baggie contained methamphetamine residue when she handed it to the booking officer. *Id.* at PageID 284. Thus the Report concluded the Twelfth District's finding that Idler knowingly conveyed a baggie with methamphetamine residue into a detention facility was a completely reasonable determination of the facts.

The Report concluded, however, that there was insufficient evidence to support the conveyance conviction because conveying "drug residue" does not amount to conveying "drugs" within the meaning of the statute, Ohio Revised Code § 2921.36(A)(2)(Report, ECF No. 7, PageID 284-85.)

**The Warden's Objections**

The Respondent's Objections are twofold: "The warden objects to the R&R's (1) conclusion that the record failed to support that Idler acted knowingly and (2) interpretation of the statue to exclude trace amounts of drugs." (Objections, ECF No. 10, PageID 287).

**The Report Agrees Idler Acted Knowingly**

The Objections argue at length that Idler acted knowingly when she brought the baggie into the jail (Objections, ECF No. 10, PageID 290-95).  The Magistrate Judge agrees.  The Report did not conclude that Idler did not act knowingly.  Instead, after discussing the evidence, the Magistrate Judge found:

> These uncontroverted facts are supportive of Idler's claim she did not knowingly convey drugs into the Brown County Jail because, as her Reply points out, she probably did not know she was going to be arrested the day she put the baggie into the bra. Nevertheless, the Twelfth District reasonably inferred that she knew the baggie was there when she undressed for the shower because she quickly, acting in a way habitual for drug users, tried to get rid of it when it fell out of the bra.

(Report, ECF No. 7, PageID 283.)  In other words, although there was evidence to support Idler's claim, the Report deferred on that point to the Twelfth District's conclusion because it was not an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  The Warden's first objection is therefore moot.

**Interpretation of the Statute**

Critically, the Warden objects to the Magistrate Judge's interpretation of the relevant statute as requiring conveyance of "more than a methamphetamine residue." (Objections, ECF No. 10, PageID 295-98).

The Magistrate Judge's interpretation of the statute as not criminalizing conveyance of trace amounts of drugs of abuse into jails was based on the **underlying purpose of the statute**: to prevent drug abuse in detention facilities. The Warden does not dispute that that is the purpose of the statute or make any argument that enforcing that purpose requires interpreting the statute to include trace amounts of drugs.

The Objections criticize the Report for not citing any state case law on the interpretation of this statute as it relates to residue amounts (Objections, ECF No. 11, PageID 295). But neither do the Objections. If there is binding Ohio case law on the question, the Magistrate Judge would have expected to see it in the Objections, but it is not to be found there. The Magistrate Judge acknowledges that habeas courts are bound by state court rulings on state law questions, including the interpretation of statutes. But the Warden cites no Ohio case law interpreting this statute as applying to residue or trace amounts.

Respondent faults the Report's citation to Sixth Circuit and Supreme Court precedent on statutory interpretation. *Id.* at PageID 296. The cited cases are supportive of the general principle that any judge engaged in statutory interpretation must understand "the policy of the legislation as a whole." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 399 (6th Cir. 1998)(Boggs, J.) quoting *United States v. American Truckings Ass'ns,* 310 U.S. 534, 543 (1940). In the latter case, the Court opined:

> In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.
>
> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. 19 Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, "excepting as a different purpose is plainly shown."

310 U.S. at 542-44. While the statutes involved in these two cases (the Fair Debt Collection Practices Act in *Lewis* and the Interstate Commerce Commission Act in *American Trucking*) were federal statutes, the authoring judges announced principles applicable to the general task of judicial

5

interpretation of statutes. Nothing in those opinions suggests that interpretation of state statutes is a different sort of judicial task[2]. Indeed, relying on the purpose of a statute to explain its meaning has ancient precedents at common law.

> "[a] construction made by the judges, that cases out of the letter of a statute, yet being within the same mischiefe, or cause of the making of the statute, shall be within the same remedie that the statute provideth; and the reason hereof is, that for the lawmakers could not possibly set downe all cases in express terms."

Sir Edward Coke, The First Part of the Institutes of the Laws of England §21, at 24.b (Philadelphia, Robert H. Small 1853)(1628), quoted in *Popovich v. Cuyahoga County Court,* 276 F.3d 808 (6th Cir. 2002).

The Warden argues Idler has waived this statutory interpretation claim by focusing her direct appeal on the *mens rea* element of the offense (Objections, ECF No. 19, PageID 296-97). The Magistrate Judge disagrees. On appeal Idler made the general claim that her conveyance conviction was not supported by sufficient evidence (Appellant's Brief, State Court Record, ECF No. 6, PageID 58). Although her argument focused on *mens rea,* it is broad enough to preserve the statutory interpretation issue. See *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

**Conclusion**

To determine whether a state conviction satisfies the *Jackson* standard, a habeas court must understand the elements of the statute of conviction. Because the evident purpose of this statute is to prevent drug abuse in jails, the Court should interpret it as not applying to conveying into a

---

[2] Acknowledging always that state court interpretations of state statutes are binding on federal courts interpreting those same statutes. To repeat, however, the Warden offers no Ohio case law interpreting this statute as applying to trace amounts of drugs.

jail a trace amount of a drug of abuse, that is, an amount that cannot be abused.  As the maxim has it, *cessante ratione legis, cessat ipsa lex.*

      The Magistrate Judge again respectfully recommends that

> the Court issue a writ of habeas corpus vacating Petitioner's conviction for conveying drugs into a detention facility. The writ should be absolute because subjecting Idler to a second trial on this charge would violate her rights under the Double Jeopardy Clause. However, the writ should only address the conveying conviction. The record reflects that the trial court merged the possession and conveying charges, presumably under Ohio Revised Code § 2941.25 (Sentencing Entry, State Court Record, ECF No. 6, Ex. 8). Idler concedes that there was sufficient evidence presented to convict her on the possession charge (Reply, ECF No. 8, PageID 271). With the conveying conviction vacated, the case should be returned to the trial judge to determine an appropriate sentence for the possession charge and also to determine under Ohio law whether that sentence should be served consecutively to the theft sentence.

(Report, ECF No. 9, PageID 285-86.)


April 28, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

8